This is 21-4088, which is David K., Kathleen K., and Amy K. v. United Behavioral Health. Council, please proceed. Good morning, Your Honors. My name is Amanda Berman on behalf of United Behavioral Health and the Alcatel-Lucent Medical Expense Plan. With me at Council table today are my colleagues Jennifer Romano and Amy Pauley. Your Honors, the decision below overturning UBH's denial of benefits should be reversed for at least two reasons. First, the District Court recognized and stated that substantial record evidence supported the reviewer's conclusion that after 97 days of residential treatment, A.K. could have been treated at a lower level of care. Your Honors, that finding should have resolved this matter. Second, the UBH reviewers agreed that the treatment A.K. received at discovery was not consistent with the plan's requirements for residential treatment, including because A.K. was seeing a psychiatrist only once a month while she was at the facility, not twice a week as is plainly required under the guidelines implementing the plan. Would you repeat the second point, please? I was busy writing on the first. Sure, Your Honor. Thank you. It's that the UBH reviewers agreed, and this was the first thing they noted in their decisions, that the treatment that A.K. received at discovery didn't comply with the plan's requirement that she be seeing a psychiatrist two times a week at the facility. She was only seeing a psychiatrist once a month. Is that what makes it custodial? No, Your Honor. So the custodial care reference in the letters is, and I would encourage the Court to look at, for example, Dr. Baker's letter. And you can see that letter at Appendix Volume 2, page 87. There are many paragraphs explaining why Dr. Baker concluded that medical necessity was not met. He gives a number of reasons. There is one reference at the end stating that the care is considered custodial when the why-now factors for the admission have been addressed. But custodial care and medical necessity are two separate exclusions under the plan. But didn't you connect them in your denials? Your Honor, no. I don't think so. I think that the statement that the care had become custodial is just one reason that the true UBH reviewers thought that medical necessity was not met. And I would submit, Your Honors, that the Court doesn't have to agree with every single reason for care not being medically necessary that is given in the decision letters. The standard here is the substantial evidence standard. And the District Court recognized, he said, the reviewers did not abuse their discretion. The evidence could reasonably be interpreted to show that AK could have been discharged to a lower level of care. We think those findings mandate affirmation of the denial of benefits under the deferential arbitrary and capricious standard, which asks, is there substantial record evidence supporting the plan's decision? As to the standard that applies here, you agree that the standard of review is an issue that we review de novo, right? This Court reviews the District Court's decision de novo, but it applies the deferential arbitrary and capricious standard to the plan's decision. Right. But the point of departure isn't the default rule that denials are reviewed de novo. Don't we decide at this stage whether the District Court correctly applied the arbitrary and capricious standard of review? You benefit from that standard of review, right? Your Honor, both parties agreed in their briefs here that the arbitrary and capricious standard applies when considering the denial of benefits. But just as a matter of law, it is your burden, right, to demonstrate that you haven't forfeited that arbitrary and capricious standard. Review de novo. That is your burden, isn't it? Yes, Your Honor, but I don't think there was any argument here about the standard of review. It wasn't the District Court apply the arbitrary and capricious standard as we had argued on summary judgment below. That wasn't contested on appeal. So I don't think that's up in the air in any sense here, Your Honors. Now, Your Honors, we talked about that custodial care language. And again, I would point the Court to Appendix Volume 2, page 14, which identifies custodial care and medical necessity as separate exclusions from the plan. And if you look at Dr. Baker's denial letter, Dr. Manning's denial letter, it is very clear that the core basis for the plan's decision was medical necessity, not a formal finding that the care had become custodial. And we also think it's wrong to... Let me ask you this. Is it possible that the District Court could have looked at the way your client handled this and said, yes, if I look at the three doctors' letters, there was substantial evidence supporting the denial based on a medical necessity. But couldn't the District Court then look at it and say, but I look back at the first two letters where there was a denial for a different reason, and that seemingly suggested that it was medically necessary, even though I think it might be a stretch to say that. But I mean, you could. You could look at that and find some inconsistency there. And then look at the additional statements about custodial care and sort of a scattershot approach maybe, and say, even though those three opinions could establish the lack of medical necessity, the decision to exclude was, I find it was arbitrary and capricious because of conflicting statements and a failure to grapple with the other medical evidence. So, Your Honor, I want to go to that inconsistency issue because, frankly, we don't think there is quote-unquote inconsistency here. I know you don't. So do this for me. Let's assume there was, and I know you can test that. So assume there was inconsistency. And then does the fact that the District Court found that there was substantial evidence supporting the exclusion, can the District Court still find that the decision was arbitrary and capricious? Your Honor, I don't think so. The question here should not be under the standard of review, were the medical reviewers perfectly consistent? It's whether there is sufficient evidence across the whole record to support the administrator, the plan administrator's decision, and whether the explanation for that decision met the relatively low bar of reasonableness. The District Court conceded that it did, and we think that should have been the end of the analysis. I do want to go back to the inconsistency issue and just point out that this is the same sort of alleged inconsistency that this Court addressed in the Mary D. decision. There, there had been a prior denial, an initial denial, because there was a lack of precertification and a lack of sufficient information. And this Court said that's not inconsistency. And we think it's the same situation here. Yes, the two prior reviewers denied because they thought residential treatment was flat out excluded. They realized they were wrong, and UBH then started the process over, converted the appeal back to a first level. They didn't do a medical necessity review, and Your Honor, as you said, I think it would be a real stretch to call their letters a medical necessity determination, and particularly a positive one, because if you look at their letters, after saying that, you know, a care appears to be necessary but is excluded, they actually both go on to identify several reasons why treatment at the Discovery Ranch facility, in fact, would not be medically necessary. They note that it seems to be focused on building skills. It doesn't meet common criteria. So the language in those letters, I don't think you can call that a positive medical necessity determination. Okay. Let me, let me ask, let me, let me take you to another issue. And that's the one that suggests that a decision can be found to be arbitrary and capricious if despite your own reviewers' determinations about medical necessity, that you don't grapple with the claimant's doctor's views on the issue, and whether, whether that's, that's a requirement, or that you end up in the arbitrary and capricious zone. Your Honor, I'm glad you brought up that issue because it's a very important one here, and we wanted to address it since the department is here to engage on it today. There is a very clear textual difference between what is required for decision letters under the health benefit portions of the ERISA regulations, and the disability benefit portion of the ERISA regulations. The health benefits regulations, and I point the Court to 29 CFR 2560-503-1G1, subsection Roman 5. That requires only that the insurer must identify the reason for denying benefits, point to the relevant plan provision, and if that provision is medical necessity, explain the scientific or clinical basis for that. We think that the reviewer's letters do that here. Dr. Baker's letter, Dr. Manning letters, Dr. Manning's letter, and the external reviewer MCMC's letter. So is it your position that the full and fair review statutory standard applies differently within ERISA, within the statute? Yes, because the department made the choice in 2016 to add a new requirement, adding to what is required for disability benefits, that it has not yet added in the health benefit context. What supports that argument? The plain regulatory text. So I would point the Court to, you know, I just put it from subsection 5, I would point the Court to subsection 7, which added in 2016, in the case of an adverse benefit determination with respect to disability benefits, there must also be a discussion of the decision, including an explanation of the basis for disagreeing with or not following the views presented by the claimant's providers. So that was a new requirement added in 2016, which is very specific on its face to the disability regulations. It has not been added in the health benefit regulations context. If we reject that argument, we're interested to hear from the Secretary on this position, but how does the perfunctory engagement here possibly satisfy the full and fair review standard? Your Honor, this Court has twice found that it does. So what the UBH reviewers did in their letters is they listed everything they considered, including the prediscovery medical record, the notes, including prediscovery doctors' opinions that were submitted by the claimants here. That is exactly what was done in the Mary D. case, as well as the Tracy O. case that this Court decided as well. Now both of those are admittedly unpublished, but the Court engaged in both of those on this very issue. You know, is it required to go further and discuss those contrary provider opinions? And the Court said no. But then what does meaningful dialogue mean? I just, I really don't understand it. I don't understand your argument. Your contention is that citing to the evidence is enough. How does that satisfy really what ERISA is about, is individual participants, your obligations to individual participants? Your Honor, I would encourage you to look at what the UBH reviewers did after they listed everything they considered. There was a lengthy discussion of why they had come to the conclusion that AK could have been treated at a lower level of care, including because the treatment she was receiving was not meeting medical necessity criteria, but a bunch of other reasons as well. It's several paragraphs long. What they didn't do and what the case law is clear as of right now they don't have to do is say, and we disagree with your prior providers for this reason. And Your Honor, I also want to note that here, those prior provider opinions were before AK had been treated, covered for three months at the Discovery Ranch facility. So they have obviously lesser relevance to the question of whether after three months is another nine months at this residential treatment facility medically necessary. And Your Honor, I don't have a lot of time left and I do want to reserve about a minute for rebuttal. So I did want to also just make the point that even if this court thought that there were deficiencies here, that there is some deficiency in the level of explanation in and direct a remand. The parties agree that an award of benefits is only appropriate where it is clear that the claimant is entitled to benefits. And they say this in their brief at page 60. That's far from clear here where we have the district court stating that record evidence supported the conclusion that AK could have been treated at a lower level of care and where we have the medical reviewers all observing that the Discovery Ranch facility treatment did not meet key plan criteria. So for these reasons and those in our briefs, we urge the court to reverse the decision below and I'd like to save my last minute for rebuttal. Thank you, counsel. Good morning, Your Honors. May it please the court. Brian King on behalf of the plaintiffs. Also with us today are DK and KK who are here in court. This is a heartbreaking case in many respects. After the briefing was completed in this case, of course, we provided, we found out that AK is no longer with us and we provided that notice to the court earlier this week. But one of the things that we are talking about here, of course, Your Honors, is what does a meaningful dialogue mean under ERISA's claim procedure regulations? The claim procedure regulations have been in place since 2002 and they require when there is a denial of benefits for medical treatment based on medical evaluation or medical necessity or experimental treatment or similar exclusion or limit that, in this case, United either provide an explanation of the scientific or clinical judgment for the determination applying the terms of the plan to the claimant's medical circumstances or that such a statement be provided upon request. That statement was, that request was made several times by the family in the appeals process. In addition, the claim procedure regulations, what I was quoting from earlier, was from subsection G of the claim procedure regulations and then subsection H requires that on review United take into account all comments, documents, records, and other information submitted by the claimant relating to the claim and the basis for the denial. That was done here. Now one of the things that the Tenth Circuit has a good long history on is requiring a meaningful dialogue. That was something that was initially laid out in Gilbertson v. Allied Signal. It was relying on the Booton v. Lockheed medical benefits plan case and in Booton, the Ninth Circuit said, in simple English, what this regulation calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries. There's nothing extraordinary about this. It's how civilized people communicate with each other regarding important matters. That's what we have here. It seems to me that when we make the seminal inquiry, medical necessity, that it almost of necessity, if you pardon the use of the word, almost of necessity requires a dialogue among the doctors. Because the treating physician is saying, in my opinion, this course of medical treatment is necessary. And the insurance company's side or the administrator's side is saying, no, it's not necessary. With that kind of a dichotomy, it almost begs for an explanation as to why, if a treating physician is requiring or expressing an opinion of medical necessity, that can be set aside by a mere, oh, no, it's not. Yeah, it concludes your statement. And what, we're told here by counsel that there is that dialogue. Is there, was there a dialogue among the physicians? The record does not reflect that, Your Honor. There was no contemporaneous discussion about this young woman's treatment or her care or her needs. What you have is repeated appeals of denied claims by the family after the fact of the treatment being provided. And what you're saying- Beagle, gobbling, gook. Well, no, not in the sense that, if you look at the appeal letters, Judge LoSera, you'll see extensive relating of the history of this young woman, extensive quoting of the medical necessity, her needs from her treating physicians and clinicians from a variety of places before she was treated at Discovery and Wald there. And what you see in response is a blanket statement that we took that into account. There's a statement that says, here's the materials that we reviewed, and listed in there is the appeal letters and the medical records. But there's no underlying discussion after that to talk about the substance of those opinions from the treating physicians. Counsel, what of your opposing counsel's argument that Mary D. and the text of the regulations relieves them of the obligation to do that outside of the disability context? Well, it's a false dichotomy, put simply, to say that the regulations require anything different. These regulations have been in place since 2002. Now, keep in mind, Your Honors, that both Gilbertson and Gaither, under those regulatory frameworks, were disability cases. They weren't health cases. So what the Tenth Circuit has required for a long, long time as a matter of precedent is a meaningful dialogue with regard to disability claims as well as health benefit cases. I don't want to get into the Secretary's argument too much. I'll reserve time for her argument. But I would... Your use of the word plan administrator, Judge Lucero, is something I want to make clear. That is a technical term under ERISA, and generally that's the employer or some entity established by the employer, a benefit committee within the company. What usually happens is that for self-funded plans, like we have here, the plan sets up, the plan administrator sets up the plan, the employee benefits plan, and then they go out and they hire entities with expertise, such as United. Now, United and its people, they definitely have expertise to call on individuals who are qualified psychiatrists, child and adolescent psychiatrists, psychologists, therapists, to evaluate the medical records in a way that's competent. So the idea, and this is something that the amicus brief from Eric said, that they aren't up to the task of providing a meaningful dialogue that engages in a substantive way, that's just wrong. United knows exactly how to do that, and they do it every day. That's how they sell their services as third-party administrators to people like Alcatel, entities like Alcatel. So you've got expertise to be able to carry this out, there's no question. And whether there was expertise available or not, the regulations say what they say in terms of requiring that there be a discussion based on, that takes into account all comments and information, and that they apply the terms of the plan to the claimant's medical circumstances. Now, applying the terms of the plan to the claimant's medical circumstances means something more than a statement in the denial letter saying, we read your stuff, thanks for that. It requires, and this may be fact-sensitive, Judge Rossman, you were talking to counsel in their presentation about what meaningful dialogue means. I think that the regulations mean what they mean and they say what they say, but the extent to which a meaningful dialogue is called for may be fact-sensitive based on the nature of the appeal letters and what's asked for, what information is asked for. Not every request for information and documents is necessarily going to have to be responded to, but when there is a request for documents and information that's relevant and directly related to the reasons for the denial, I think that as a fiduciary, plan administrators and claims administrators, such as United, have to respond under certain circumstances. Other times, maybe they don't have to respond because the request for information is not specifically relevant or it's outlandish or something. So there's a degree to which what constitutes a meaningful dialogue is going to be fact-sensitive from case to case. So let me, I take from that, that your position is not in every case, regardless of what's presented to the plan administrator, that when, if they issue a denial, they have to thoroughly grapple with everything that you present to them. You're correct, Judge Carson. That's correct. I think that the extent to which a reasonable, meaningful dialogue occurs is going to depend on the facts and circumstances of each case. And there are going to be some appeal letters that a claims administrator gets that they just go, look, we've already told you everything we can tell you and everything we know, and we can't tell you anything more than what we told you. That's not depriving the claimant of a meaningful dialogue, but there are other cases where the questions that are asked and the requests for information and documents are something that the claims administrator does need to respond to in a meaningful way and come to grips with. That was a phrase that the Court of Appeals used. Your argument leaves me in a muddle because you don't give us a standard of review upon which we can make a determination as judges about whether a meaningful dialogue did or did not occur, or whether it was or was not necessary. Other than the language of the regulation. Some cases you say to Judge Carson, well, some cases, yes, Judge, you do, but the other cases you don't. Where does that leave us? The language of the regulation is where it leaves you, and that's... Well, maybe we should hear from the government. Thank you. Good morning, Your Honors. My name is Susana Benson, representing the Department of Labor. The Department filed an amicus brief in this case to address the application of ERISA's full and fair review requirements, which have been in place since ERISA was enacted in 1974, and which the Secretary has implemented through regulations further specifying how to meet those statutory requirements. We want to make two main points today. First, the district court properly cited to the 2004 Gaither opinion when it found that because it did not fairly engage with the claimant's evidence during the appeals process. And second, the department wants to correct any impression that the full and fair review standards for health claims like this one and disability claims like the Gaither case are materially different. They are not. The statute at ERISA 503, which applies to all employee benefit plans, requires that all benefit plans provide adequate written denials that set forth the specific reasons for the denial and that provide a reasonable opportunity for full and fair review. And regulations... So what do you say in regard to our Mary D. and Tracy O. cases as far as the sufficiency of the denial in this case? Well, in United's argument where they cite to the 2019 opinion of Mary D.D. Anthem, when they claim that there are different standards for disability and health claims, there are not different standards. The 2016 amendments to the disability claim regulation did not alter the minimum standards. Thus the long standard interpretations of ERISA and the general claims regulation language that are applicable to all plans remains in force. Well, why did they make this... Let me stop you for a minute. Why did they make the change at all of that in the disability realm? If it didn't change anything, why make it? Aren't we required to read these regulations in a way that gives meaning to the regulatory process and the rulemaking process? Your Honor, during the rulemaking process for the 2016 disability amendments, we cited... We stated in both the preamble to the notice of proposed rulemaking and in the preamble to the final rule that these were not new regulatory requirements and that the department was making express existing requirements because it was aware that plans were not meeting the requirements for full and fair review under the 5031 claims regulation. We say that in both federal register documents. Now let me ask you this. Were you losing cases based on this language? We were finding that disability plans, although most ERISA plans are not disability plans, disability plans amounted for the majority of benefits litigation and plan administrators were not complying with their duties under 5031 regulations. And so we made this existing requirement express because it comes with the department's attention that claimants were finding their claims denied with little or no explanation at all. Okay, but that... I mean, I still don't get it as a matter of interpretation when... I mean, surely you can't say that changes to regulations mean nothing because you said it doesn't mean anything different than what we already said it meant. We have to give some effect to you including new express language other than it didn't change anything. We just wanted claimants to get a better explanation and make clear. Well, again, we'll point to the case law and for the past 25 years starting with Booten case in 1997 that interpreted the claims regulation as requiring meaningful dialogue. And a participant can't engage... Different. That's different. That's a higher level of discussion than what is expressly... And I'm going to let you go ahead for a minute, but that's expressly set forth in the disability regulation now. Exactly. And we were saying that the case law and the requirements in the statute at 503 and in regulations at 503, 1G, J and H require the same thing. You have to engage in meaningful dialogue to meet those requirements. And a participant can't engage in meaningful dialogue, but doesn't know the reasons why a plan denied their claim and disagreed with their treating provider. So those have always been the standard. Those applied before Gaither was written. And the 26 amendments to the disability claims regulation that further specify the content of a denial letter do not change that. In conclusion, your honors, the department asks that you affirm the decision of the district court that is consistent with the department's regulations and requirements for full and fair review and expressly dismiss appellant's argument that claim there are materially different standards under ERISA and its regulations for health and disability claims. Thank you, your honors. Thank you. Let's add a minute for the appellant since the appellee went over time. Thank you, your honors. I want to make three points on rebuttal. First, your honor, Judge Lucero, in response to something you said, there might be good reasons to require a back and forth between the doctors discussing the treatment, but that is not what the health benefits regulations currently require. And that's exactly the thing that stakeholders got to weigh in on in 2016 as to whether that made sense in the disability context. I would just note that when you're talking about medical necessity as the issue, that it makes almost no sense to have a dialogue among non-professionals that doesn't even engage the reasons that a treating physician is advancing for the necessity. Well, your honor, I do want to highlight that the three UBH, the two UBH reviewers and the external, these were all psychiatrists. So they were very much medical professionals. And this gets to my second point. There was a meaningful discussion here. And again, I would direct the court as an example to Dr. Baker's letter, volume two, page 88. He doesn't just say, I consider this stuff, but I find it's not medically necessary. He says medical necessity was not met because there was no active treatment. She wasn't seeing a psychiatrist twice a week. There's little evidence of active psychiatric illness. The attending psychiatrist did not change the diagnoses over the record over the time of treatment. He notes there was no evidence of ongoing self-injurious behavior in those three months or the prior residential treatment. And then he goes on for a whole other paragraph. This is, in our view, the meaningful discussion that is required under the current version of the regulations. And finally, your honor, I just want to highlight that if this discussion was not meaningful enough in the court's view, that is exactly the type of error for which remand, not an award of benefits, is the appropriate remedy here. Thank you, your honors. Judge Rossman, Judge Lucero, you have anything further? No, thank you. Thanks. Okay. Thank you, counsel. The case will be submitted.